## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Christina Rosen, being duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Special Agent with the United States Department of Labor, Office of Inspector General, Office of Investigations ("DOL OIG") in Boston, Massachusetts. My responsibilities as a Special Agent with DOL OIG include investigating fraud, waste and abuse of Department of Labor programs, employees, and departments.  I have been employed by the United States as a Special Agent since October 2007. I am a graduate of the Criminal Investigator Training Program of the Federal Law Enforcement Training Center in Glynco, Georgia, and have received extensive training in criminal investigation procedures and criminal law.  In 2005, I graduated from Northeastern University with a Bachelor's degree in Criminal Justice. In 2006, I graduated from Boston University with a Master's degree in Criminal Justice.

2. During my tenure as a Special Agent, I have conducted investigations of several types of criminal activity, including work visa fraud, unemployment insurance fraud, CARES Act fraud, false claims fraud, employee benefits fraud, identity theft, and money laundering. During the investigation of these cases, I have participated in the execution of search and arrest warrants and have seized evidence as evidence, fruits, and/or instrumentalities of violations of federal law.

## PURPOSE OF AFFIDAVIT

3. Along with other members of federal and state law enforcement, I am investigating Teshawnda Knight ("KNIGHT") for various federal crimes, including, but not limited to, wire fraud, in violation of Title 18, United States Code, Section 1343.

4. This affidavit is submitted in support of a criminal complaint and arrest warrant charging KNIGHT with wire fraud, of in violation of Title 18, United States Code, Section 1343 (the

"TARGET OFFENSE"). As set forth below, I have probable cause to believe that, from on or about April 30, 2020, KNIGHT perpetrated a scheme to fraudulently obtain tens of thousands of dollars in pandemic unemployment benefits.

5. The facts in this affidavit come from my personal observations and review of records, my training and experience, and information obtained from other investigators and witnesses. This affidavit is submitted for the limited purpose of establishing probable cause for the issuance of the requested criminal complaint. Accordingly, I have not included each and every fact known to me and other investigators involved in this investigation.

## BACKGROUND

### *Pandemic Unemployment Assistance*

6. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was signed into law. The CARES Act created a new temporary federal unemployment insurance program called Pandemic Unemployment Assistance ("PUA"). Generally, PUA provided unemployment insurance benefits for individuals (i) who were not eligible for other types of unemployment (e.g., the self-employed, independent contractors, or gig economy workers); and (ii) who were otherwise unable to work but were prevented from doing so because of the COVID-19 pandemic. PUA provided payments for these benefits beginning on or about January 27, 2020 and ending on or before September 4, 2021.

7. The Massachusetts Department of Unemployment Assistance ("DUA") administered and managed the PUA program in the Commonwealth of Massachusetts.

8. Massachusetts residents applied to DUA for PUA benefits through an online portal over which they submitted personally identifiable information ("PII"). As part of the PUA application process, claimants provided their first and last name, Social Security number ("SSN"), date of

birth, and a residential and mailing address.  In addition, claimants selected a preferred payment method: direct deposit or payment of their benefit onto a debit card.  Claimants also provided a phone number and email address to be used by DUA to provide updates, contact the claimant, and for authentication purposes.  The email address was also used by the claimant to access the PUA claim account and, if necessary, reset their claim account password.

9.  Claimants had to certify that they were working in Massachusetts, and not working in another state besides Massachusetts, when they were impacted by COVID-19.  Claimants also had to certify that the information in the Massachusetts PUA application was accurate and that the claimants were submitted claims on behalf of himself/herself and not on behalf of another person.

10. PUA claims submitted to DUA were processed via servers located in Colorado.  PUA claims were frequently submitted via the internet, and I understand that individuals who submitted PUA-related information to DUA via the internet caused wires to be transmitted to and/or from these Colorado-based servers.  PUA claims information was also transmitted to DUA headquarters, located in Boston, Massachusetts, for purposes of review by DUA employees, maintenance, and facilitation of correspondence with claimants.

## PROBABLE CAUSE

*Investigation Background and Overview*

11. I am aware that there is an ongoing investigation of a criminal organization known as the Heath Street Gang, which involves several federal and state law enforcement agencies, including the Boston Police Department ("BPD"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Homeland Security Investigations ("HSI"), the Department of Labor Office of Inspector General ("DOL-OIG"), the United States Secret Service ("USSS"), the Internal

Revenue Service ("IRS"), the Department of Agriculture Office of Inspector General ("USDA-OIG"), the Massachusetts State Police ("MSP"), the Boston Housing Authority Police Department ("BHAPD"), and the Suffolk County Sheriff's Department ("SCSD").

12. Based on the investigation, I am aware that since at least approximately 2019, an organized retail theft group involving members/associates of the Heath Street Gang has openly and brazenly stolen merchandise from various stores in Massachusetts and New Hampshire. During the thefts, the involved individuals openly take merchandise, sometimes directly in front of store associates.  When confronted by store associates, the individuals often become belligerent, make threats, and at times, engage in acts of violence.  The individuals then leave with the merchandise without providing payment.  Based on the investigation, these thefts constitute one of several methods of generating illicit income by members/associates of the Heath Street Gang.

13. As part of the investigation of the Heath Street Gang, multiple suspected fraudulent CARES Act unemployment claims were identified.  These claims include multiple claims for the same claimant with altered social security numbers ("SSNs") reported to DUA, multiple claims filed by claimants in states other than Massachusetts, and/or the submission of suspected fraudulent employment letters from a company, Married 2 The Mop Cleaning LLC ("M2M"), owned and operated by individuals associated with the Heath Street Gang.  According to Commonwealth of Massachusetts records, on or about September 17, 2020, M2M was organized by Rickquille McKinney.  Per Commonwealth of Massachusetts records, prior to its December 29, 2023 state-ordered involuntary dissolution, M2M was owned and operated by Rickquille McKinney.  Per the investigation, as detailed below, Rickquille McKinney's wife, Rachel McKinney, was purportedly M2M's Human Resources Manager.  Per the investigation,

Rickquille McKinney and Rachel McKinney are members/associates of the Heath Street Gang. Per the investigation, and as further detailed below, M2M was used by the Heath Street Gang and numerous members/associates, including KNIGHT, to commit various crimes, including fraudulently obtaining CARES Act monies, and to facilitate criminal activities, including by providing cover employment.

14. The investigation has identified at least twenty-three (23) DUA PUA claims, which received a total of over $917,000 in benefits, that submitted nearly identical M2M letters either from Rickquille McKinney or Rachel McKinney (in some cases, using her maiden name "Rachel Olivier"), in an effort to meet the PUA eligibility requirement of proving attachment to the Massachusetts labor market. A review of these PUA claims identified multiple notations by DUA employees responsible for reviewing and adjudicating issues on the claims noting concerns about the legitimacy of M2M and/or the M2M letters. In multiple PUA claims, DUA identified these letters to be suspected as fraudulent, including based on the fact that M2M was not registered with the Commonwealth of Massachusetts until September 2020 – after the date these PUA claims were filed.

### *KNIGHT's Pandemic Unemployment Wire Fraud Scheme*

15. Based on the investigation, starting on or around April 30, 2020, KNIGHT engaged in a scheme to fraudulently obtain tens of thousands of dollars in PUA benefits compensating her for a period dating back to March 6, 2020 and continuing through in or around August 21, 2021.

16. KNIGHT submitted PUA claim applications (1) to DUA with her true social security number ("KNIGHT's True SSN DUA Claim"), for which she received approximately $49,725 in unemployment benefits; (2) to DUA with an altered social security number that contained false information ("KNIGHT's Altered SSN DUA Claim"), for which she received approximately

5

$52,384 in unemployment benefits; and (3) to multiple other state unemployment agencies that contained false information, for which she received at least approximately $3,141 in unemployment benefits.

17. In total, based on the investigation, KNIGHT wrongfully obtained at least approximately $105,250 in benefits designed for people who were unable to work due to the COVID-19 pandemic.

KNIGHT's True SSN DUA Claim – April 30, 2020

18. On or about April 30, 2020, a PUA claim (A00-000-0143-6385) was filed electronically through the DUA portal with KNIGHT's name, Social Security number, date of birth, and other personal identifying information, including her home and mailing address in Hyde Park, MA.[1] It stated that KNIGHT did not have a driver's license or state-issued ID.

19. As submitted, KNIGHT's True SSN DUA Claim asserted that KNIGHT's employment was first impacted by the COVID-19 pandemic on March 16, 2020 and certified that KNIGHT was self-employed, an independent contractor, or a gig-worker and that COVID-19 had severely limited her ability to perform her normal work. Additionally, it certified that KNIGHT had worked in Massachusetts in 2019, made approximately $15,989 in employment income in 2019, and had 4 dependents.

20. KNIGHT's True SSN DUA Claim requested that PUA benefits be deposited into a Metabank checking account xxxxxxxxxx6416. According to Metabank records, account

---

[1] Based on the investigation, I believe that KNIGHT's True SSN DUA Claim application for PUA benefits, submitted via the internet and processed via DUA's Colorado-based servers, involved the transmission of interstate wires.

xxxxxxxxxx6416 was opened by "Teshawnda Knight" with the same Social Security number, date of birth, and address provided in KNIGHT's True SSN DUA Claim.

21. Based on the information submitted to DUA, KNIGHT's True SSN DUA Claim was approved for a weekly benefit of $267 and $100 per week in dependency allowance plus any additional applicable CARES Act monies.

22. On or about May 9, 2020, phone number ###-###-6151 was provided to DUA in KNIGHT's True SSN DUA Claim to be used for two-step verification. A review of MA RMV applications filed by KNIGHT identified she provided ###-###-6151 in her Learner's Permit Application signed July 6, 2020.

23. On or about June 4, 2020, DUA placed an Identity Verification Issue on KNIGHT's True SSN DUA Claim and requested additional identity-related information. In response, on or about June 7, 2020 and July 28, 2020, several photographs were submitted, including of (1) KNIGHT in a selfie-style photograph with an expired MA Identification Card and a Social Security card in the name of "TESHAWNDA L KNIGHT" with her date of birth and true Social Security number, and (2) back and front of KNIGHT's then-current MA Identification Card displaying her same Hyde Park, MA address listed in KNIGHT's True SSN DUA Claim but a different apartment number. On or about August 24, 2020, DUA approved the adjudication of the Issue.

24. On or about October 10, 2020, the payment preference on KNIGHT's True SSN DUA Claim was changed to a Metabank, N.A.[2] account xxxxxxxxxx1626. According to Pathward records, account xxxxxxxxxx1626 is a Netspend account in the name of "Teshawnda Knight" with the same Social Security number, date of birth, and address as provided in KNIGHT's True

---

[2] According to publicly available sources, on or about March 29, 2022, Metabank, N.A. changed its business name to Pathward, N.A.

SSN DUA Claim application, and phone number ###-###-3542. According to MA RMV records, KNIGHT listed phone ###-###-3542 on an application for her Driver's License Renewal signed May 31, 2022.

25. A review of statements for Netspend account xxxxxxxxxx1626 identified 87 deposits from DUA totaling $53,329. Of these, 47 deposits were for KNIGHT's True SSN DUA Claim, totaling $27,449. The remaining 40 deposits were for KNIGHT's Altered SSN DUA Claim (detailed below).

26. On or about March 22, 2021, DUA placed an Employment Substantiation Issue[3] on KNIGHT's True SSN DUA Claim. In response, on or about June 18, 2021, a letter dated June 18, 2021 from "Rachel Mckinney, Human Resource Manager" of Married 2 The Mop Cleaning LLC was submitted. The letter stated that KNIGHT was to start employment with Married 2 The Mop Cleaning LLC, but "due to COVID19 hours and employees were reduced and we were no longer able to hire her for the position."

27. Based on a review of the letter, it contains multiple fraud indicators, including that it did not specify an offer date, nor a date that employment had been anticipated to start, nor a job title, nor a job description, nor compensation, as well as the fact that the letter was not signed. Additionally, further investigation of M2M identified that M2M was registered with the Commonwealth of Massachusetts months after KNIGHT's True SSN DUA Claim was submitted.

---

[3] Based on an extension of CARES Act legislation, in March 2021, DUA placed Employment Substantiation Issues on PUA claims. These Issue instructed claimants to provide proof of their attachment to the Massachusetts workforce to support eligibility for PUA benefits. In the same Issue, DUA informed claimants if they fail to meet eligibility requirements, an overpayment would be placed on their claim and they would be required to pay the benefits back to DUA.

28. On or about August 24, 2021, DUA denied the claim, stating: "Claimant failed to establish attachment to the MA labor market" and requesting additional supporting documentation.  No such documentation was submitted.

29. In total, DUA paid approximately $49,725 on KNIGHT's True SSN DUA Claim.

30. Based on the investigation and the above, including the information above and the submission of a suspected fraudulent employment letter to substantiate her PUA eligibility, as well as the review of numerous nearly identical M2M letters submitted in 22 other DUA PUA claims (some of which DUA identified to be suspected as fraudulent), KNIGHT's True SSN DUA Claim was fraudulent.

### KNIGHT's Altered SSN DUA Claim – November 10, 2020

31. On or about November 10, 2020, a PUA claim (A00-000-1360-0333) was filed electronically through the DUA portal with KNIGHT's name, date of birth, Hyde Park, MA address (the same as provided in KNIGHT's True SSN DUA Claim), and other personal identifying information.[4]  KNIGHT's name, date of birth, and address were the same as provided in KNIGHT's True SSN DUA claim.  However, KNIGHT's Altered SSN DUA Claim listed a Social Security number with different middle two digits.[5]

32. As submitted, KNIGHT's Altered SSN DUA Claim asserted that KNIGHT's employment was first impacted by the COVID-19 pandemic on March 6, 2020 and certified that

---

[4] Based on the investigation, I believe that KNIGHT's Altered SSN DUA Claim application for PUA benefits, submitted via the internet and processed via DUA's Colorado-based servers, involved the transmission of interstate wires.

[5] As detailed below, according to Social Security Administration records, the Social Security number provided in KNIGHT's Altered SSN DUA Claim is not assigned to TESHAWNDA KNIGHT.

KNIGHT was self-employed, an independent contractor, or a gig worker and that COVID-19 had severely limited her ability to perform her normal work. Additionally, it certified that KNIGHT had worked in Massachusetts in 2019, made $3,567 in employment income, and had 5 dependents.

33. KNIGHT's Altered SSN DUA Claim requested that PUA benefits be deposited into a DUA Bank of America Pre-Paid debit card.

34. Based on the information submitted to DUA, KNIGHT's Altered SSN DUA Claim was approved for a weekly benefit of $267 and $125 per week in dependency allowance plus any additional applicable CARES Act monies.

35. On or about November 10, 2020, DUA placed an Identity Verification Issue on KNIGHT's Altered SSN DUA Claim and requested additional identity-related information. In response, on or about November 16, 2020, several photographs were submitted, including of (1) the back and front of KNIGHT's then-current MA Identification Card displaying her same Hyde Park, MA address listed in KNIGHT's True SSN DUA Claim and Altered SSN DUA Claim but a different apartment number, and (2) the front of a Social Security card in the name of "TESHAWNDA L KNIGHT" with her date of birth and the Social Security number listed in KNIGHT's Altered SSN DUA Claim. On or about November 17, 2020, DUA approved the adjudication of the issue.

36. A review of the MA Identification Card photograph submitted on or about November 16, 2020 identified that it was the same as the MA Identification Card photograph submitted in KNIGHT's True SSN DUA Claim, as detailed above.

37. A review of the Social Security card photograph submitted on or about November 16, 2020 identified that the two middle digits appear to have been physically altered by a physical

cut-and-paste of a separate piece of paper displaying two digits. According to Social Security Administration records, the Social Security number displayed on the submitted photograph is not assigned to KNIGHT.[6]

38. On or about January 22, 2021, the payment preference on KNIGHT's Altered SSN DUA Claim was changed to a Metabank account xxxxxxxxxx1626. This Metabank account xxxxxxxxxx1626 is the same to which payment preferences in KNIGHT's True SSN DUA Claim were updated on or about October 10, 2020, as detailed above.

39. On or about March 5, 2021, phone number ###-###-6151 was provided to DUA in KNIGHT's Altered SSN DUA Claim to be used for two-step verification (the same phone number provided to DUA to be used for two-step verification in KNIGHT's True SSN DUA Claim and provided in KNIGHT's MA RMV Learner's Permit Application signed July 6, 2020, as detailed above).

40. On or about March 22, 2021, DUA placed an Employment Substantiation Issue on KNIGHT's Altered SSN DUA Claim. In response, on or about June 18, 2021, a letter dated June 18, 2021 from "Rachel Mckinney, Human Resource Manager" of Married 2 The Mop Cleaning LLC was submitted. The letter stated that KNIGHT was to start employment with Married 2 The Mop Cleaning LLC, but "due to COVID19 hours and employees were reduced and we were no longer able to hire her for the position."

---

[6] According to Social Security Administration records, the individual to whom this Social Security number is in fact assigned resides outside of Massachusetts. On or about January 23, 2024, this individual confirmed to investigators that he/she has never applied for nor received unemployment in Massachusetts, has never provided his/her Social Security number to apply for and/or receive benefits, and was unaware that someone had used his/her Social Security number in Massachusetts to receive benefits.

41. Upon review of this letter, it appears to be the same letter submitted in response to the Employment Substantiation Issue placed on KNIGHT's True SSN DUA Claim that, based on a review thereof, contains multiple fraud indicators, as detailed above.

42. On or about August 24, 2021, DUA denied the claim, stating: "Claimant failed to establish attachment to the MA labor market.  Claimant has 2 open claims."

43. In total, DUA paid approximately $52,384 on KNIGHT's Altered SSN DUA Claim.

44. Based on the investigation and the above, including the submission of a suspected fraudulent employment letter to substantiate her PUA eligibility, the fact that this letter appears to be the same letter as submitted in KNIGHT's True SSN DUA Claim, the review of numerous nearly identical M2M letters submitted in 22 other DUA PUA claims (some of which DUA identified to be suspected as fraudulent), the use of a Social Security number not associated with KNIGHT, the appearance of the submitted Social Security card photograph that appears to have been physically altered by a physical cut-and-paste, and the statements provided by the individual with whom the Social Security number is actually associated, KNIGHT's Altered SSN DUA Claim was fraudulent.

### KNIGHT's Additional PUA Claims in Other States

45. A review of KNIGHT's true Social Security number identified additional CARES Act unemployment claims with KNIGHT's name and date of birth filed in multiple states, including Arizona, California, Indiana, and Pennsylvania.

46. For example, according to Indiana Department of Workforce Development records, on or about February 9, 2021, a claim was filed in KNIGHT's name with her true Social Security Number, date of birth, Hyde Park, MA address, phone number ###-###-6151 (the same phone number provided to DUA to be used for two-step verification in KNIGHT's True SSN DUA

Claim and KNIGHT's Altered SSN DUA Claim and that was provided in KNIGHT's MA RMV Learner's Permit Application signed July 6, 2020, as detailed in paragraphs # above),[7] and email address (the "KNIGHT email address")[8] among other personal identifiers ("KNIGHT's Indiana Claim"). A review of MA RMV applications filed by KNIGHT identified she provided the KNIGHT email address in her Learner's Permit Application signed July 6, 2020.

47. KNIGHT's Indiana Claim certified that KNIGHT was a hairstylist in Fort Wayne, IN, that her place of employment was closed as a result of COVID-19 and had first become unemployed or unable to work due to the COVID-19 pandemic on September 10, 2020. It also certified that KNIGHT had not applied for benefits in another state at any time since February 16, 2020 and had not worked in another state or filed an unemployment claim in another state in the last two years.

48. Based on the information submitted to Indiana Department of Workforce Development, KNIGHT's Indiana Claim was approved for a weekly benefit of $149 plus any additional applicable CARES Act monies. In total, Indiana paid approximately $3,141 on this claim.

49. Based on the investigation and the above, including the submission of numerous CARES Act unemployment claims with KNIGHT's name and date of birth filed in multiple states and KNIGHT's Indiana Claim certification that KNIGHT had not applied for benefits in another state at any time since February 16, 2020 and had not worked in another state or filed an

---

[7] Unemployment claims with KNIGHT's true Social Security number, name, and date of birth filed in Arizona and California also listed this phone number ###-###-6151.

[8] Unemployment claims with KNIGHT's true Social Security number, name, and date of birth filed in Arizona, California, and Pennsylvania also listed the KNIGHT email address.

unemployment claim in another state in the last two years, KNIGHT's Indiana Claim was fraudulent.

## CONCLUSION

50. Based on the above, there is probable cause to believe that KNIGHT has committed the TARGET OFFENSE.

*Christina Rosen* / DCC

Special Agent Christina Rosen
U.S. Department of Labor
Office of Inspector General

Subscribed and sworn to before me telephonically in accordance with the requirements of Federal Rule of Criminal Procedure 4.1 on February ___9___, 2024.

HON. DONALD L. CABELL
CHIEF UNITED STATES MAGISTRATE JUDGE